# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANTHA VONGPHACHANH, | Case No. 1:17-cv-00314-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 16, 20, 21) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.

## INTRODUCTION

Plaintiff Nantha Vongphachanh ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from major depressive disorder, posttraumatic stress disorder, diabetes, hypertension, and allergies. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

/ / /

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 7, 9.)

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on August 24, 2012, alleging disability beginning June 25, 2011. (AR 214-215.) Plaintiff's applications were initially denied on April 12, 2013, and denied upon reconsideration on October 24, 2013. (AR 103-107, 114-124.) Plaintiff requested and received a hearing before Administrative Law Judge Sharon Madsen ("the ALJ"). Plaintiff appeared for a hearing on March 5, 2015, but that hearing was postponed because the interpreter scheduled did not speak Plaintiff's language. (AR 50-54.) Plaintiff then appeared for a hearing on June 16, 2015. (AR 29-49.) On June 25, 2015, the ALJ found that Plaintiff was not disabled. (AR 8-22.) The Appeals Council denied Plaintiff's request for review on December 30, 2016. (AR 1-4.)

**A.     Hearing Testimony**

Plaintiff testified at the hearing on June 16, 2015, with the assistance of a Laotian interpreter.[2] (AR 31-42.) She lives in a house with two of her children and a male friend. (AR 33-34.) She has a driver's license and sometimes drives. (AR 34.) She has a fourth grade education from when she was in Laos. (AR 34-35.) She also took some adult classes in the United States. (AR 35.) She understands a little bit of English. (AR 35.)

She does not need any help showering or getting dressed. (AR 35.) She does some chores and her children do other chores. (AR 35.) She microwaves food. (AR 35.) She goes with her friend to shop sometimes. (AR 35.) On the weekend, she goes to church, and during the week, she goes to an adult care center three days a week. (AR 35-36.) During a typical day, she goes to the adult care center where she eats, does some exercise, and eats again. (AR 36.) She stays home on days she is not going to the adult care center. (AR 36.) She watches TV and visits with her mother. (AR 36.) She regularly takes her diabetes medication. (AR 38.) She remembers to take it, but her children help administer her medication. (AR 38.)

She has seen Dr. Maximo Parayno and others for depression. (AR 40.) The takes

---

[2] As Plaintiff is only challenging a finding regarding her mental impairments and her literacy, the Court only discusses the parts of the record relevant to Plaintiff's mental impairments and literacy.

medication she takes helps.  (AR 40-41.)  Sometimes, she feels very sad, wants to cry, gets angry, and wants to kill herself.  (AR 40.)  She talks to counselors once a month at an adult program.  (AR 40.)  She meets with two people who work at the social program.  (AR 41.)

She can somewhat pay attention to the TV.  (AR 41.)  The man that was living with her helped her pay her bills.  (AR 41.)  She does not have a problem getting along with other people, but she sometimes has a problem getting along with her mother.  (AR 41.)  She cannot fall asleep due to her brain doing too much thinking.  (AR 41-42.)  She has nightmares two or three times a week.  (AR 42.)  She is unable to finish projects that she starts.  (AR 42.)

A vocational expert ("VE") Judith Najarian, also testified at the hearing.  (AR 42-48.)  The first hypothetical that the ALJ asked the VE was for an individual with the same age, education, and work background as Plaintiff and who had "just a little bit of English" for language.  (AR 43-44.)  This person could lift and carry 50 lbs occasionally and 25 lbs frequently; sit, stand, or walk 6 to 8 hours a day; frequently climb ladders, ropes, or scaffolds; and frequently perform gross handling.  (AR 44.)  This individual could not do Plaintiff's past relevant work as poultry dressing, but could do the grader for dress poultry position.  (AR 43-44.)

The second hypothetical is based on the first hypothetical with the additional limitation of simple routine work.  (AR 44.)  This person has some English and can at least do demo jobs.  (AR 44-45.)  The individual could be a rack loader, which is medium, SVP 1, and frequent handling.  (AR 45.)  The VE did a 25% reduction of the number of jobs because of continuous hand activity.  (AR 45.)  The individual could also be a carton forming machine operator, which is medium and SVP 2, and the VE reduced the number of jobs by 50% because of continuous hand activity.  (AR 45.)  The individual could also be a package sealer machine operator, which is medium and SVP 2, and the VE reduced the number of jobs by 20% because of continuous hand activity.  (AR 46.)

**B.     ALJ Findings**

- Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2016.

- Plaintiff has not engaged in substantial gainful activity since June 25, 2011, the alleged onset date.

- Plaintiff has the following severe impairments: lumbar degenerative joint disease, a history of carpal tunnel syndrome status post bilateral surgical release, and depression.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- After careful consideration of the entire record, Plaintiff has the residual functional capacity ("RFC") to lift and carry 50 lbs occasionally and 25 lbs frequently; sit, stand, and/or walk for 6 hours in an 8-hour workday; frequently climb ladders, ropes, or scaffolds; and frequently perform gross handling. Mentally, Plaintiff can perform simple routine tasks.

- Plaintiff is unable to perform any past relevant work.

- Plaintiff was born on June 12, 1967, and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

- Plaintiff has a marginal education and is able to communicate in English.

- Transferability of job skills is not an issue in this case because Plaintiff's past relevant work is unskilled.

- Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

- Plaintiff has not been under a disability, as defined in the Social Security Act, from June 25, 2011, through June 25, 2015.

(AR 11-23.)

### III.

### LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff raises two main issues in this appeal. First, Plaintiff argues that the ALJ erred by finding that she could communicate in English. Second, Plaintiff argues that the ALJ erred in evaluating her mental impairments, and specifically, by rejecting Dr. Parayno's opinions and not addressing the GAF scores rendered by Dr. Manolito Castillo and Dr. Asher Gorelik.

Defendant counters that substantial evidence supports the ALJ's finding that Plaintiff was able to communicate in English and the ALJ's rejection of Dr. Parayno's opinions. Defendant contends that an ALJ is not required to specifically address GAF scores.

### A.    Ability to Communicate in English

Plaintiff argues that the ALJ erred in finding that she was literate in English. Plaintiff asserts that the evidence of her literacy is vague and somewhat confusing. Defendant responds that the ALJ considered Plaintiff's literacy in her decision and the finding that Plaintiff was able to communicate in English is supported by substantial evidence.[3] In reply, Plaintiff contends that the ALJ did not ask Plaintiff whether she could read or write in English instructions or inventory lists. Plaintiff also asserts that Defendant does not point out any evidence in the record that would support that Plaintiff could do these things.

"The Commissioner has the burden to show that the claimant can perform other work existing in the national economy, 'given his residual functional capacity, age, education, and

---

[3] Defendant also provides reasons that were not cited by the ALJ. While the Court may draw reasonable inferences from the ALJ's opinion, Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989), it cannot consider Defendant's post hac rationalizations. "A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency." Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991).

work experience.' " Silveira v. Apfel, 204 F.3d 1257, 1262, n.14 (9th Cir. 2000).  Since literacy is only relevant to the finding of whether Plaintiff can perform other work in the economy, and not to whether she is disabled, the Commissioner bears the burden of establishing literacy.  Id.

The Social Security regulations define illiteracy as an inability to read and write.  20 C.F.R. § 416.964(a)(1).  The Ninth Circuit has held "only literacy in English is considered, since literacy in other languages has little effect on the number of jobs in the national economy available to the claimant.  20 C.F.R. § 416.964(b)(5).  'Illiterate' therefore means illiterate in English.  Chavez v. Dep't of Health and Human Services, 103 F.3d 849, 852 (9th Cir. 1996); see also Silveira, 204 F.3d at 1261 (illiteracy is the inability to read or write in English).  However, "[w]hile illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance."  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(I).

Here, the ALJ found:

> Although the claimant intermittently used a Laotian interpreter at hearing, the claimant also spoke some English at hearing, demonstrating the ability to communicate in English.  There were medical records that specifically noted the claimant spoke English – and included a detailed history from the claimant about her family problems and alleged life difficulties (Exhibit 9F, p. 1).  The claimant testified she had completed the 4th grade in Laos, but had also taken adult classes in the United States.  She testified she understood some English.  I noted that portions of claimant's testimony were a mixture of Laotian and English words, despite the availability of an interpreter.  In fact, the claimant fully answered some of my questions in English.  The claimant admitted in her Disability Report form that she preferred Laotian, but could read and understand English and write more than her name in English (Exhibit 2E, p. 1).  The claimant completed her Adult Function Report in English (Exhibit 5E).  These factors, taken as a whole, support my finding that the claimant has marginal education and can communicate in English.

(AR 21.)

Plaintiff believes that the record needs to be further developed regarding her ability to speak, read, write, and understand English because she was not asked these questions at the hearing.  The ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered."  Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th

Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).  The ALJ has a duty to further develop the record where the evidence is ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence.  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  Further, the ALJ's duty to fully develop the record is heightened where the claimant may be mentally disabled and, therefore, unable to protect her own interests.  Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir. 1992).

Viewing the record as a whole, the Court finds that the ALJ did not err by not further developing the record regarding Plaintiff's ability to communicate in English.  Plaintiff does not cite to any authority to support her argument that an ALJ must specifically ask a plaintiff during a hearing to what extent she understands, speaks, reads, and writes English.  The relevant question on review is whether there is substantial evidence supporting the ALJ's finding.  While an ALJ may meet her burden for determining a plaintiff's ability to communicate in English by asking a plaintiff about her abilities to communicate in English, it is not the only way.  The evidence in the record of a plaintiff's ability to communicate in English, such as reports or doctors' visits, may provide substantial evidence for the ALJ's finding.

Here, the ALJ considered Plaintiff's ability to testify in English at the hearing.  (AR 21.) The ALJ discussed how Plaintiff answered some questions with a mixture of Laotian and English words, and in fact, was able to fully answer some of the ALJ's questions in English.  (AR 21.) Plaintiff does not argue that this is inaccurate.  Although Plaintiff argues that it is unclear whether she is able to communicate in English, her ability to understand and speak English at the hearing is evidence that she has the ability to communicate in English.  Further, Plaintiff testified during the hearing that she understood a little bit of English and that she had taken adult classes in the United States.  (AR 21, 35.)

The ALJ discussed Plaintiff's ability to speak English during her involuntary psychiatric hospitalization in February 2014.  (AR 393.)  Dr. Castillo noted that Plaintiff spoke English. (AR 393.)  The history of present illness section of that psychiatry encounter report includes a detailed history.  (AR 393.)  Plaintiff's ability to say a detailed accounting of her family

1 problems and life difficulties in English is evidence of her ability to speak English.

2       The ALJ relied on Plaintiff's statement in her disability report that she preferred to speak
3 and understand Laotian, but she could read and understand English and write more than her
4 name in English. (AR 21, 248.) While Plaintiff contends that the ALJ did not ask Plaintiff how
5 much more than her name she could write in English, there is other evidence in the record that
6 reflects Plaintiff's ability to write in English.

7       The ALJ considered that Plaintiff completed her Adult Function Report in English. (AR
8 21, 282-290.) Plaintiff argues that Plaintiff's function report appears to have been written by
9 someone else because the handwriting is different than the signatures on Plaintiff's request for
10 hearing by administrative law judge, appointment of representative, and acknowledgment of
11 receipt forms. Plaintiff's signature on these forms is different from her printed name on her
12 function report. However, Plaintiff did not sign the function report. (AR 282-290.) She printed
13 her name and the printed name is consistent with the handwriting used in the other sections of
14 the form. (AR 282-290.) The forms Plaintiff cites to do not call into question whether Plaintiff
15 wrote her disability report. While Plaintiff's printed name on her function report is different
16 from her signature on other documents, this does not meant that she did not write the function
17 report. It is a rational interpretation that Plaintiff's printed name and cursive signature are
18 different. In addition, Plaintiff's function report is written in the first person and when there are
19 mistakes crossed out, Plaintiff initialed these mistakes. (AR 282-289.) Therefore, the fact that
20 Plaintiff completed her adult function report in English supports the ALJ's finding that Plaintiff
21 can communicate in English.

22       Thus, the Court finds that there is substantial evidence in the record to support the ALJ's
23 finding that Plaintiff is literate in English.

24       **B.**    **Plaintiff's Mental Impairments**

25       Plaintiff argues that the ALJ erred in evaluating her mental impairments because she
26 rejected the opinions of Dr. Parayno, Dr. Castillo, and Dr. Gorelik. Plaintiff also asserts that the
27 ALJ erred because she impermissibly substituted her own lay opinion when formulating
28 Plaintiff's mental RFC. Defendant responds that the ALJ provided good reasons explaining why

she rejected the opinions of Dr. Parayno.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional.  See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).  In general a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted).  If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record.  Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

Where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substantial evidence, and the ALJ is to resolve the conflict.  Andrews, 53 F.3d at 1041.  However, if the nontreating physician's opinion is based upon clinical findings considered by the treating physician, the ALJ must give specific and legitimate reasons for rejecting the treating physician's opinion that are based on substantial evidence in the record.  Id.

The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings.  Thomas, 278 F.3d at 957.  It is the ALJ's responsibility to consider inconsistencies in a physician opinion and resolve any ambiguity.  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999).

1.    Dr. Parayno's Opinions

Plaintiff argues that the ALJ erred by rejecting the opinions of her treating psychiatrist, Dr. Parayno.  Dr. Parayno provided three opinions.  His January 2013 opinion was on an

immigration form entitled Medical Certification for Disability Exceptions. (3F.) In July 2014,[4] Dr. Parayno completed a county form stating that Plaintiff was unable to work. (AR 390-391.) The third opinion that Dr. Parayno gave was a psychiatric evaluation on February 21, 2015. (AR 402-405.) The ALJ discussed these opinions separately, and therefore the Court will also analyze these opinions separately.[5]

### a. January 2013 Opinion

Dr. Parayno diagnosed Plaintiff with recurrent and severe major depressive disorder without psychotic features and chronic PTSD as part of the January 14, 2013 immigration form.[6] (AR 362.) He stated that Plaintiff was disoriented during a mental status assessment and did not know the date, including the day, month, or year, her home address, and phone number. (AR 364.) She was tentative with her date of birth. (AR 364.) She had impaired remote and recent memory and impaired concentration and attention span. (AR 364.) He opined that Plaintiff could not read, write, and speak English. (AR 364.) He opined that she could not answer questions regarding United States history and civics, even in a language that she understands. (AR 364.) He found that her cognitive deficits such as impaired memory, concentration, and attention span impacted her ability to learn English and a core knowledge of United States history and civics. (AR 364.)

The ALJ gave the January 2013 opinion little weight. (AR 17.) The ALJ found:

> I noted Dr. Parayno referred to the claimant intermittently as "he" and "she," suggesting either inattention or use of standardized answers. Furthermore, the claimant testified she could understand some English and even testified, at times, in the English language at hearing. His statement that the claimant could not give her address, phone, or even date of birth was refuted by her testimony at hearing, where she aptly demonstrated knowledge of such information. His statement that the claimant had a "disability or impairment" was vague, as it provided no functional limitations. Finally, his opinion that the claimant was "disabled"

---

[4] The ALJ states that this opinion was rendered in February 2014, but it appears from the form that it was signed by Dr. Parayno on July 24, 2014. (AR 17, 390-391.)

[5] The Court notes that Defendant provides reasons for rejecting Dr. Parayno's opinions that were not cited by the ALJ. The Court cannot consider Defendant's post hac rationalizations. See Ceguerra, 933 F.2d at 738.

[6] Plaintiff contends that Dr. Parayno spoke Plaintiff's native language and points to an interpreter's certification form attached to Dr. Parayno's January 2013 opinion. (AR 366.) However, the interpreter's certification form indicates that the interpreter used during Dr. Parayno's examination of Plaintiff was Lilly Bliatout. (AR 366.) There is no proof that Dr. Parayno spoke Plaintiff's native language.

invades an issue reserved to the Commissioner (SSR 96-5p).

(AR 17.)

The fact that Dr. Parayno's opinion is on a matter reserved for the Commissioner is in itself not a specific and legitimate reason to reject the opinion. See Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014). Therefore, the Court reviews the other reasons to determine whether the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting Dr. Parayno's 2013 opinion.

The ALJ found that Dr. Parayno's use of "he" and "she" indicated inattentiveness or use of standardized answers. (AR 17.) Dr. Parayno stated in response to question 8, "[f]rom the trauma of war in Laos, **he** suffers from Post-traumatic Stress Disorder for having witnessed deaths or threats to **her** life or serious injury to her physical integrity…" (AR 363) (emphasis added). Dr. Parayno stated in response to question 9, "**[s]he** did not know the first President of the United States … **He** thought Thanksgiving month is October. **He** knew President Obama as our President. **She** was not able to identify Q J G K & F or read TRIANGLE AND SQUARE ARE DIFFERENT. (AR 364) (emphasis added). The ALJ found that this shows inattention or the use of standardized answers, which supports the ALJ's decision to give this opinion little weight.

At the hearing, Plaintiff was able to state her address, phone number, and date of birth. (AR 33.) In fact, when asked if her phone number was what was on file, she indicated that it had changed and she provided the new number. (AR 33.) This contradicts Dr. Parayno's testing that allegedly showed that Plaintiff was disoriented and did not know the date, her home address, or her own phone number. (AR 364.) Further, the ALJ noted that Plaintiff was able to testify at times during the hearing in English. (AR 17.) Plaintiff also testified that she could understand a little bit of English. (AR 35.)

The ALJ also pointed out that Dr. Parayno's statement that Plaintiff had a disability or impairment was vague. (AR 17.) Dr. Parayno did not provide any functional limitations. (AR 361-365.)

Although Plaintiff offers a different interpretation of the evidence, where the ALJ's

interpretation is rational, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's. See Burch, 400 F.3d at 679. Therefore, the Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence for giving little weight to Dr. Parayno's January 2013 opinion.

### b. July 2014 Opinion

Dr. Parayno next provided an opinion in July 2014. (AR 390-391.) He found that Plaintiff was unable to work. (AR 390.) He opined that she needed significant, frequent assistance with her daily activities, she was unable to interact appropriately and communicate effectively with coworkers, instructors, and members of the public, she was unable to complete everyday tasks, and she was unable to adapt to stress related to work-like situations. (AR 391.)

The ALJ found:

> In February 2014, Dr. Parayno completed a county form stating the claimant was unable to work. He opined she needed help with her activities of daily living, was unable to interact appropriately, unable to complete everyday tasks, and unable to adapt to stress from work-like situations (Exhibit 8F). I give the February 2014 opinions of Dr. Parayno little weight because the claimant admitted to Dr. Wagner that she was able to perform her own activities of daily living without assistance (see Exhibit 5F). His statement that the claimant could not interact was refuted by other evidence showing the claimant had friends, went to temple, and spent time with her mother, her children, and a male friend (hearing transcript and Exhibit 4F). His statement that she could not perform everyday tasking was refuted by the claimant's admission to Dr. Lewis that she cooked, did dishes, paid bills, and did laundry (Exhibit 4F). The clinical notes from Dr. Surinder Dhillon showing normal psychiatric behavior (Exhibit 7F, pp. 1 and 2) also refuted his opinions.

(AR 17-18.)

Plaintiff contends that it was error to reject Dr. Parayno's July 2014 opinion because of Plaintiff's activities. She argues that a "holistic view of the record" does not reveal any substantive contradictions between Dr. Parayno's opinion and Plaintiff's activities. Plaintiff also asserts that the ALJ did not provide specific reasons for rejecting Dr. Parayno's opinion that Plaintiff has a poor stress tolerance and she was unable to complete everyday workplace routines. Defendant argues that the ALJ properly found that Dr. Parayno's opinion was inconsistent with other evidence, including Plaintiff's daily activities and examination findings by other physicians.

Dr. Parayno stated that Plaintiff needed significant, frequent assistance in daily activities.

(AR 391.) However, Plaintiff told consultative examiner, Dr. Roger Wagner, that she could perform her own activities of daily living without assistance. (AR 17, 380.) Dr. Parayno's statement that Plaintiff could not perform everyday tasks is contradicted by Plaintiff's statement to Dr. Lewis that she cooked, washed dishes, did laundry, and paid her bills without any reminders. (AR 17, 374.) Plaintiff is correct that she stated during the hearing that her children helped with chores, her friend helped her pay her bills, and she microwaved her food. (AR 35, 41.) While Plaintiff stated at the hearing that her children do chores, she testified that she did chores and they did other chores. (AR 35.) Plaintiff also stated multiple times in the record that she cleans, does chores, and cooks. (AR 283-284, 374, 380.) Ms. Melissa Somtakoune indicated in the third party function report that Plaintiff prepared meals if she wants and if she feels okay. (AR 270.) Plaintiff also told Dr. Wagner that she drives and shops. (AR 380.) However, Plaintiff stated in her function report that an Asian store helps her pay her bills and that most of the time her friends help. (AR 285.)

When the Court reviews the record as a whole, the Court finds that there is substantial evidence supporting the finding that Plaintiff's daily activities contradict Dr. Parayno's opinion. Plaintiff is attempting to proffer an alternative reading of the record. Where the ALJ's interpretation is rational and reasonable, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's. See Burch, 400 F.3d at 679. Therefore, the Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence when she found that Dr. Parayno's opinion was contradicted by Plaintiff's statement that she could perform her own activities of daily living without assistance and her statement that she cooked, did dishes, paid her bills, and did laundry.

Dr. Parayno stated that Plaintiff was unable to interact appropriately or effectively with coworkers and members of the public. (AR 391.) However, the ALJ found this was inconsistent with Plaintiff having friends, going to temple, and spending time with her mother, her children, and a male friend. (AR 17, 35, 41, 374.) Plaintiff contends that she can only occasionally socialize and that occasional socializing does not contradict Dr. Parayno's opinion.

In Ghanim, the Ninth Circuit found that there was no inconsistency between a physician's

opinion and the plaintiff's daily activities after considering a holistic review of the record. Ghanim, 763 F.3d at 1162. There, while the plaintiff could perform some basic chores and occasionally socialize, he relied heavily on his caretaker, struggled with social interactions, and limited himself to low-stress environments. Id. Here, Plaintiff told Dr. Lewis that she had several friends whom she has known for two years and is close to. (AR 374.) She told Dr. Wagner that she shopped. (AR 380.) She testified at the hearing that she goes to church on the weekend and visits with her mother. (AR 35-36.) In her function report, she indicated that her friends help her pay her bills, she goes shopping for groceries with her friend once a week, and she goes to Lao's temple. (AR 285-286.) Therefore, the Court finds that when considering the record as a whole, substantial evidence supports the ALJ's finding that Dr. Parayno's opinion regarding Plaintiff's socialization abilities is contradicted by Plaintiff's social activities.

The ALJ also rejected Dr. Parayno's July 2014 opinion because the clinic notes from Dr. Dhillon showed normal psychiatric behavior. (AR 17-18.) Plaintiff asserts that the examination was actually performed by a nurse practitioner at the beginning of Plaintiff's hospitalization in February 2014. Plaintiff contends that the examination was not to assess Plaintiff's mental functioning, but rather to determine whether Plaintiff was medically stable.

The February 19, 2014 examination was conducted by Nurse Practitioner ("NP") Cecil Litiema. (AR 385-386.) However, the Court notes that Dr. Dhillon cosigned the patient note. (AR 385-386.) NP Litiema noted that Plaintiff was admitted on 5150 because she was a danger to herself. (AR 385.) During the review of Plaintiff's systems, Plaintiff stated that she had an altered mental status, depression, hallucinations, and suicidal ideas. (AR 385.) During the psychiatric portion of the physical examination, NP Litiema found that Plaintiff's behavior was normal. (AR 386.) NP Litiema stated in the plan section that Plaintiff was medically stable and that she would have therapy per psychiatry. (AR 386.) Although NP Litiema is not a psychiatrist and is not a doctor, she is able to comment on Plaintiff's psychiatric behavior during an examination that she conducted. Therefore, NP Litiema's observation that Plaintiff had normal psychiatric behavior may be considered by the ALJ when determining what weight to give medical opinions. The Court finds that the NP Litiema's observation that Plaintiff had

normal psychiatric behavior is a specific and legitimate reason to reject Dr. Parayno's July 2014 opinion.

Although Plaintiff asserts that the ALJ did not address Dr. Parayno's opinion that Plaintiff was unable to complete everyday tasks and unable to adapt to stress from work-like situations, the ALJ provided specific and legitimate reasons supported by substantial evidence for giving little weight to the July 2014 opinion. Thus, the Court finds that the ALJ did not err in giving little weight to Dr. Parayno's July 2014 opinion.

### c.    February 2015 Opinion

In February 2015, Dr. Parayno conducted a psychiatric evaluation of Plaintiff. (AR 402-405.) During the mental status examination, Plaintiff was alert, pleasant, and cooperative, had fair grooming, and was tentatively oriented. (AR 404.) She had impaired concentration and attention span, impaired remote memory, and impaired recent memory. (AR 404.) She did not give an appropriate abstract answer to a question and she had impaired social judgment. (AR 404.) Her mood was "definitely depressed," her affect was blunted, and her judgment and insight were minimal. (AR 404-405.) He opined that she appears to have restricted activities of daily living and that she seems to have a constricted social life. (AR 405.) He stated that "[s]he has never been involved in any substantial gainful activities and with his multiple medical problems and mental disabilities, it is apparent she is unable to work." (AR 405.)

The ALJ found:

> I give the February "2105" opinions of Dr. Parayno little weight. First, as discussed above, Dr. Parayno already demonstrated opinions that were not consistent with the medical records or that were refuted by other evidence, including the claimant's own admission as to her activities. Second, his vague statements that claimant "appeared" to have restrictions in activities of daily living or "seemed" to have a constricted social life suggested a lack of certainty. His statement that the claimant had never engaged in substantial gainful activity was refuted by the earnings records showing the claimant had earnings as high as $27,136.74 in 2010 and had many other years of substantial gainful activity (Exhibit 7D). His opinion that the claimant could not work invaded an issue reserved to the Commissioner (SSR 96-5p). In short, the records suggested Dr. Parayno was either misinformed or inattentive. For these reasons, I give his opinions little weight.

(AR 18.)

Plaintiff argues that this opinion was not vague, that the mistake regarding Plaintiff's

16

1  substantial activities is only a mistake about Plaintiff's background, and that the fact the opinion

2  was on an issue reserved to the Commissioner is not a proper reason to reject it. Defendant

3  asserts that the ALJ properly gave the opinion little weight as it was inconsistent with the other

4  evidence.

5  Plaintiff is correct that the fact that Dr. Parayno's opinion is on a matter reserved for the

6  Commissioner is in itself not a specific and legitimate reason to reject the opinion. See Ghanim,

7  763 F.3d at 1161. Therefore, the Court reviews the other reasons to determine whether the ALJ

8  provided specific and legitimate reasons supported by substantial evidence for rejecting Dr.

9  Parayno's February 2015 opinion.

10  In Dr. Parayno's opinion, he used "appears" and "seems," which indicate a lack of

11  certainty regarding Plaintiff's activities of daily living and social life. (AR 405.) Plaintiff

12  contends that the ALJ failed to mention that Dr. Parayno also opined that it was apparent that

13  Plaintiff could not work. However, the fact that Dr. Parayno opined that it is apparent that

14  Plaintiff is unable to work does not change the vagueness of the statements regarding activities

15  of daily living and social life. These two statements regarding Plaintiff's activities of daily living

16  and social life are vague and suggest a lack of certainty, as the ALJ found. Plaintiff contends

17  that any vagueness is compensated for because the statements are consistent with Dr. Parayno's

18  prior opinions and the Global Assessment of Functioning ("GAF") scores by Dr. Gorelik and Dr.

19  Castillo. As the ALJ found, Dr. Parayno's prior opinions were not consistent with the medical

20  records or were refuted by other evidence. (AR 18.) As discussed above, the ALJ gave specific

21  and legitimate reasons supported by substantial evidence for giving little weight to Dr. Parayno's

22  January 2013 and July 2014 opinions. Even if GAF scores by other doctors are consistent with

23  this February 2015 opinion, it does not change the fact that the opinion is vague and the opinion

24  itself indicates a lack of certainty. The ALJ's finding that Dr. Parayno's statements regarding

25  Plaintiff's activities of daily living and social life are vague is a specific and legitimate reason to

26  reject the opinion.

27  Plaintiff asserts that Dr. Parayno made a mistake of fact regarding Plaintiff's background

28  when he said that Plaintiff had never engaged in any substantial activities. Plaintiff contends that

1  this does not contradict Dr. Parayno's actual observations and the opinion.  However, as the ALJ

2  pointed out, this contradiction suggests that Dr. Parayno was misinformed or inattentive.  (AR

3  18.)  Dr. Parayno's statement that it is apparent Plaintiff is unable to work is connected to his

4  statement that Plaintiff has never been involved in any substantial gainful activities.  (AR 405.)

5  If Dr. Parayno was aware that Plaintiff had performed substantial gainful activities for a number

6  of years, he could change his opinion of her ability to work.  The fact that Dr. Parayno was

7  misinformed or inattentive regarding Plaintiff's substantial gainful activity calls into question his

8  opinion.  Therefore, the Court finds the fact that Dr. Parayno was misinformed or inattentive is a

9  specific and legitimate reason for giving his opinion little weight.  Accordingly, the Court finds

10  that the ALJ did not err in giving little weight to Dr. Parayno's February 2015 opinion.

11      2.   <u>GAF Scores Opined by Dr. Castillo and Dr. Gorelik</u>

12      Plaintiff asserts that Dr. Castillo and Dr. Gorelik's GAF scores are opinions that the ALJ

13  was required to accept or reject.  "A Global Assessment of Functioning ("GAF") score is the

14  clinician's judgment of the individual's overall level of functioning.  It is rated with respect only

15  to psychological, social, and occupational functioning, without regard to impairments in

16  functioning due to physical or environmental limitations."  <u>Cornelison v. Astrue</u>, ED CV 11-440-

17  PLA, 2011 WL 6001698, at *4 n.6 (C.D. Cal. Nov. 30, 2011) (citing American Psychiatric

18  Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 32 (4th ed.

19  2000)).

20      Both Dr. Castillo and Dr. Gorelik assessed Plaintiff with a GAF score of 50.  GAF scores

21  between 41 and 50 indicate serious symptoms or any serious impairment in social, occupational,

22  or school functioning.  <u>Garrison v. Colvin</u>, 759 F.3d 995, 1003 n.4 (9th Cir. 2014); <u>see</u> <u>also</u>

23  <u>Vanbibber v. Carolyn</u>, No. C13-546-RAJ, 2014 WL 29665, at *1 (W.D. Wash. Jan. 3, 2014)

24  (quoting DSM-IV at 32) (a GAF range of 41–50 reflects "[s]erious symptoms (e.g., suicidal

25  ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social,

26  occupational, or school functioning (e.g., no friends, unable to keep a job).").

27      Plaintiff points to an Administrative message that "[W]e consider a GAF rating as

28  opinion evidence."  SSA Administrative Message 13066 (effective July 22, 2013).  Plaintiff also

cites to an unpublished Ninth Circuit opinion, <u>Craig v. Colvin</u>, which stated, "[a]lthough GAF scores alone do not measure a patient's ability to function in a work setting, the Social Security Administration (SSA) has endorsed their use as evidence of mental functioning for a disability analysis." 659 F.App'x 381, 382 (9th Cir. 2016) (unpublished)[7] (internal citations omitted). In that case, the Ninth Circuit held that the ALJ did not err by relying in part on GAF scores. <u>Id.</u> However, the Ninth Circuit did not say that failing to address GAF scores is error.

In fact, the Ninth Circuit has stated in other unpublished opinions that an ALJ did not err by failing to address a doctor's GAF score. <u>Hughes v. Colvin</u>, 599 F.App'x 765, 766 (9th Cir. 2015) (unpublished); <u>McFarland v. Astrue</u>, 288 F.App'x 357, 359 (9th Cir. 2008) (unpublished). "The Commissioner has determined the GAF scale 'does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings.'" <u>McFarland</u>, 288 F.App'x at 359 (quoting 65 Fed.Reg. 50,746, 50,765 (Aug. 21, 2000)). However, GAF scores are relevant and may be considered by the ALJ in considering the claimant's general functional abilities. <u>Graham v. Astrue</u>, 385 F.App'x 704, 706 (9th Cir. 2010).

Therefore, while an ALJ may consider a GAF score in considering a claimant's abilities, an ALJ does not need to accept or reject a GAF score. Thus, the Court finds that the ALJ did not err by not accepting or rejecting the GAF scores rendered by Dr. Castillo and Dr. Gorelik.

### 3. ALJ's Finding that Plaintiff Could Perform Simple Routine Tasks

Plaintiff asserts that the ALJ's finding that Plaintiff had the RFC to perform simple routine tasks is unsupported by any psychiatric opinion of record. Plaintiff contends that the ALJ impermissibly provided a lay interpretation of the evidence. Defendant counters that the ALJ properly performed her function as factfinder.[8]

---

[7] Unpublished dispositions and orders of this Court issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1. Ninth Circuit Rule 36-3(b); <u>see</u> <u>Animal Legal Def. Fund v. Veneman</u>, 490 F.3d 725, 733 (9th Cir. 2007) ("as of January 1, 2007, we must now allow parties to cite even unpublished dispositions and unpublished orders as persuasive authority").

[8] The Court notes that Plaintiff mentions for the first time in her reply brief that the consultative examiner and the state agency physicians did not review the records of Plaintiff's inpatient hospitalizations. Plaintiff does not appear to be arguing that this was error by the ALJ. To the extent she is arguing that the ALJ erred because the consultative examiner and state agency physicians did not review the records of Plaintiff's inpatient hospitalizations, the Court finds Plaintiff has waived this argument as she did not raise it in her opening brief.

It is error for the ALJ to define her own limitations for a plaintiff.  See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (the ALJ was not qualified as a medical expert and therefore could not permissibly go outside the record to consult medical textbooks for purpose of making his own assessment of the claimant's physical condition); Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, ... the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").  The ALJ is to determine credibility, resolve conflicts in testimony, and resolve ambiguities; however his findings must be supported with specific and rational reasons.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

Plaintiff is correct that no doctor specifically opined that she is limited to simple, routine tasks.  However, three doctors opined that she does not have a severe mental impairment, which is less restrictive than the RFC that the ALJ found.  (AR 19, 61, 72, 83-85, 95-96, 370-375.)  Dr. Lewis stated that Plaintiff did not appear to be suffering from a major mental disorder and she appeared to be functioning adequately.  (AR 19.)  Dr. Cory Brown, PsyD, an agency reviewing physician, opined that Plaintiff's mental impairment is not severe.  (AR 61, 72.)  Another agency reviewing physician, Dr. Richard Kaspar, PhD, affirmed Dr. Brown's opinion.  (AR 85, 96.)

The ALJ gave limited weight to Dr. Lewis's opinion because her GAF score of 60 suggested some moderate limitations and she did not explain the discrepancy between the GAF score and her opinion that Plaintiff had no significant mental limitation.  (AR 19.)  The ALJ gave the opinions of Dr. Brown and Dr. Kaspar little weight because they overly relied on Dr. Lewis's opinion.  (AR 19.)  The ALJ also found that "the records showing [Plaintiff] had some mental health treatment and at least two involuntary psychiatric hospitalizations support limiting [Plaintiff] to simple routine tasks."  (AR 19.)

Therefore, the ALJ considered the medical evidence and the opinions in the record when deciding Plaintiff's RFC.  The ALJ determined that the opinions of Dr. Lewis, Dr. Kaspar, and Dr. Brown were not restrictive enough and based on Plaintiff's mental health treatment and two

involuntary psychiatric hospitalizations, the ALJ restricted Plaintiff to simple routine tasks. This is not a situation where the ALJ found an RFC that is less restrictive than all of the doctors' opinions. The ALJ did not impermissibly substitute her lay opinion. Thus, the Court finds that the ALJ did not err in formulating Plaintiff's RFC for her mental impairments.

## V.

### CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in finding that Plaintiff can communicate in English and in her evaluation of Plaintiff's mental impairments.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Nantha Vongphachanh. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: __**March 14, 2018**__

_____

UNITED STATES MAGISTRATE JUDGE